FILED
CLERK, U.S. DISTRICT COURT
4-27-11
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY WILLIS, <br><br> Plaintiff, <br> v. <br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. CV 10-4994-OP <br><br> MEMORANDUM OPINION; ORDER |

## I.
## PROCEDURAL HISTORY

Bobby Willis ("Plaintiff"), appearing pro se, applied for Social Security Disability ("SSD") benefits, with a filing date on November 8, 2005. (Administrative Record ("AR") at 99-103.) On March 8, 2006, his application was denied. (Id. at 52.) He made a timely request for reconsideration, which was denied on November 9, 2006. (Id. at 53, 59.) On January 12, 2007, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 23, 2008. (Id. at 26-51, 65.) On March 12, 2008, the ALJ issued an unfavorable decision. (Id. at 15-25.) Plaintiff timely appealed the hearing decision to the Appeals Council. On April 30, 2010, the Appeals Council declined to review his case. (Id. at 1-3.) Thus, the ALJ's decision is the

Commissioner's final decision in this matter.

On July 7, 2010, Plaintiff filed a Complaint seeking review in this Court of the Commissioner's decision denying Social Security benefits. (Dkt. No. 3.) On November 16, 2010, Defendant filed an Answer to the Complaint. (Dkt. No. 13.) On January 14, 2011, Plaintiff filed a Motion for Summary Judgment. (Dkt. Nos. 18, 19 ("Plaintiff's MSJ").) On February 14, 2011, Defendant filed a Cross-Motion for Summary Judgment. (Dkt. No. 21 ("Defendant's MSJ").)

Pursuant to 28 U.S.C. § 636(c), the parties have consented to proceed before the United States Magistrate Judge. (See Dkt. Nos. 7, 25.) The decision in this case is made on the basis of the pleadings, the Administrative Record, the Motion for Summary Judgment, and the Cross-Motion for Summary Judgment. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

## II.
## **DISPUTED ISSUES**

As reflected in the cross-motions, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1) Whether the ALJ properly considered Plaintiff's subjective complaints and credibility (Pl.'s MSJ at 6-8; Def.'s MSJ at 2)

(2) Whether the ALJ properly considered the opinions of Plaintiff's treating physician and chiropractor (Pl.'s MSJ at 6-8; Def.'s MSJ at 6); and

(3) Whether the ALJ properly determined that Plaintiff was capable of performing other work (Pl.'s MSJ at 10; Def.'s MSJ at 8).

/ / /
/ / /
/ / /

## III.
## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## IV.
## **DISCUSSION**

**A.     The ALJ Failed to Properly Consider Plaintiff's Credibility.**

Plaintiff contends that the ALJ improperly rejected his subjective complaints of impairment. (Dkt. No. 19 ("Willis Decl.") at 6.) The Court agrees with Plaintiff's contention.

In his decision, the ALJ rejected Plaintiff's credibility as follows:

> After thoroughly evaluating the claimant's alleged symptoms and limitations in accordance with the above criteria, the undersigned finds that the claimant is capable of performing a significant range of work activities. While the claimant's complaint of severe low back pain is confirmed to some extent by the findings of the January 2005 MRI

study, Dr. Lorber emphasized that it showed only minimal degenerative disc disease. Although the nerve conduction study of the lower extremities showed some findings consistent with an L5 radiculopathy, the claimant did not report radiating low back pain to Dr. Lee in his February 2006 study. Nor did Dr. Lee indicate any signs of radiculopathy, as straight leg raising was negative. The claimant admitted that he is currently only taking ibuprofen. Dr. Lorber noted that the claimant's treating physician recommended additional stronger pain medications including Mobic, Flexeril and Motrin. Dr. Lorber indicated that ibuprofen is a minor pain medication which is customarily prescribed at 800 mg. The fact that the claimant is only taking 600 mg. shows that his doctor did not consider him to be in severe pain. Dr. Lorber noted that the claimant never went to the emergency room for stronger medication, and emphasized that he had not taken a muscle relaxant for the past month. As noted above, the claimant has received only occasional conservative medical care and a brief period of chiropractic treatment. Thus, the severe limitations in sitting, standing and walking alleged by the claimant are unsupported. In contrast to his testimony, the claimant indicated in a Pain Questionnaire that his medications are effective. Dr. Lorber testified that in his opinion, the claimant could perform a full range of medium work.

(AR at 22 (citations omitted).)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also

Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284. Social Security Ruling ("SSR") 96-7p further provides that an individual may be less credible for failing to follow prescribed treatment without cause. SSR 96-7p.

Here, there is no evidence in the record suggesting that Plaintiff is malingering. Accordingly, the ALJ could reject Plaintiff's testimony regarding the severity of his pain and other symptoms only if the ALJ stated clear and convincing reasons for doing so. See Cotton, 799 F.2d at 1407; see also Smolen, 80 F.3d at 1281; Dodrill, 12 F.3d at 918; Bunnell, 947 F.2d at 343.

5

The ALJ rejected Plaintiff's credibility because, despite a nerve conduction study suggesting L5 radiculopathy, Plaintiff did not report to the consultative examiner that he suffered from radiating low back pain and the consultative examiner did not find any signs of radiculopathy, "as straight leg raising was negative." (AR at 22.) However, the nerve conduction test was not the only indication in the record that Plaintiff suffered from radiculopathy. In an April 29, 2005, report, neurosurgeon Hooshang Kasravi, M.D., diagnosed "[s]ciatic radiculopathy bilaterally with the left being worse." (Id. at 201.) Notably, the ALJ made no mention of the neurosurgical assessments by Dr. Kasravi. In addition, while the ALJ concludes that Plaintiff did not report radiating low back pain to the consultative examiner, this is not confirmed by the examiner's report. While it is true that the examiner does not state that Plaintiff suffered from radiating back pain, neither does the examiner indicate that Plaintiff affirmatively denied such pain. (Id. at 277-80.) There is no way to know from a review of the report whether the examiner failed to mention the radiating pain or whether Plaintiff did not complain of such pain. Significantly, the record is replete with references to Plaintiff's complaints of radiating back pain. (Id. at 147, 175, 178, 184, 187, 200, 208, 222.) Finally, while the consultative examiner reported negative straight leg raising, Dr. Kasravi reported that straight leg raising was positive bilaterally. (Id. at 201.) Again, the ALJ made no mention of Dr. Kasravi's findings.

The ALJ also rejected Plaintiff's credibility on the basis that Plaintiff is only taking ibuprofen for pain. (Id. at 22.) However, Plaintiff testified at the hearing before the ALJ that he could not afford stronger medication. (Id. at 42.) As the ALJ noted, Plaintiff's treating physician had recommended stronger medication. (Id. at 309, 310, 316, 318-19.) It is understandable that, despite a physician's recommendation for stronger pain medication, Plaintiff failed to obtain such medication because he cannot afford it. Neither is the Court persuaded by the

ALJ's reliance on the medical expert's reference to Plaintiff's failure to present at the emergency room for stronger pain medication. Plaintiff had received a physician's recommendation for stronger pain medication, but explained that he could not afford to fill those prescriptions. If Plaintiff was unable to afford the medications prescribed by his treating physician, there is no reason to believe he could afford an emergency room visit or the medications the emergency room physician might prescribe. "[A] disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment." Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995).

      The ALJ also rejected Plaintiff's credibility because he only received conservative treatment. (Id. at 22.) However, it does not appear from the record that Plaintiff was able to afford more than conservative treatment. He received as much care as he could from the Los Angeles Mission Community Clinic, but it is not apparent that the clinic was able to provide more than conservative treatment. Notably, when Plaintiff received medical treatment through his employer's workman's compensation coverage, Plaintiff received considerable chiropractic treatment and received a recommendation from a neurosurgeon for "a full intensive medical treatment regimen, including therapy medications, exercises and perhaps epidural nerve block injections," with an additional recommendation for surgical treatment in the event that Plaintiff's radiating leg pain continued. (Id. at 170-276.)

      The ALJ also rejected Plaintiff's credibility on the basis of his Pain Questionnaire. The ALJ concludes that in the questionnaire, Plaintiff stated that his "medications are effective." (Id. at 22.) However, in the Pain Questionnaire, Plaintiff stated that he was taking Naproxen and Cyclobenzaprine, and that the medications only relieve his pain "some what," and that he has to "double up" on his medication. (Id. at 147.)

      Finally, the ALJ rejected Plaintiff's subjective complaints on the basis of the

medical expert's conclusion that the medical evidence showed only "minimal" degenerative disc disease. (Id. at 22.) However, the ALJ was able to rely heavily on the medical expert's testimony only after he rejected the opinions of Plaintiff's treating physician, Dr. Barnes (see Discussion Part IV.B. supra) and ignored Dr. Kasravi's findings. Because the Court concludes below that the ALJ failed to give legally sufficient reasons for rejecting Dr. Barnes' opinions, the Court cannot conclude that the ALJ's reliance on the medical expert's opinions, over those of the treating physician, is a clear and convincing reason to reject Plaintiff's credibility.

Thus, this action must be remanded to allow the ALJ to properly consider Plaintiff's subjective complaints of impairment and provide legally sufficient reasons for rejecting Plaintiff's credibility, if the ALJ again determines rejection is warranted.[1]

**B.     The ALJ Failed to Properly Consider the Opinions of Plaintiff's Treating Physician.**

Plaintiff contends that the ALJ erroneously rejected the opinion of his treating physician, Chester Barnes, M.D., and his treating chiropractor, Farzad Tavebaty. (Willis Decl. at 7.) The Court agrees with Plaintiff's contention regarding his treating physician.

**1.     Treating Physician.**

Plaintiff was treated by Dr. Barnes at the Los Angeles Mission Community Clinic from June 22, 2005, through December 13, 2007. (AR at 292-300, 308-22, 325.) Dr. Barnes diagnosed Plaintiff with degenerative disc disease and herniated disc of the lumbar spine. (Id.) Dr. Barnes routinely noted the presence of muscle spasms and tenderness of Plaintiff's lumbar spine upon physical examination. (Id.

---

[1] The Court expresses no view on the merits.

at 295-300, 308-11, 313, 321-22.)  Dr. Barnes consistently prescribed naproxen and ibuprofen for Plaintiff's pain and often supplemented that with various muscle relaxers and pain medication, such as Ultram, Tylenol with codeine, Mobic, and Flexeril.  (Id. at 295-99, 309, 310, 315, 316, 317, 318-19, 320, 321.)

On June 21, 2006, Dr. Barnes wrote a letter on behalf of Plaintiff, indicating that Plaintiff was totally and permanently disabled and precluded from performing any type of gainful employment.  (Id. at 312, 325.)

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen, 80 F.3d at 1285.  The ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632-33; SSR 96-2p.

Here, the ALJ rejected the opinions of Dr. Barnes as follows:

> Records and progress notes from the Los Angeles Mission Community Clinic beginning in June 2005 show that the claimant has received routine general health maintenance on an occasional basis. The claimant was conservatively treated for low back pain and various mild ailments. Notably, there are instances of several missed appointments. A brief letter dated June 2006 from the claimant's treating physician,

9

Chester Barnes, M.D., stated that the claimant had been under his care for degenerative disc disease of the lumbar spine with a herniated disc. Dr. Barnes alleged that the claimant was "totally and permanently disabled to perform any type of gainful employment." He did not provide a more specific residual functional capacity assessment supported by objective findings and accompanied by a description of the type of treatment provided and the claimant's response to such treatment. Therefore, the undersigned does not give controlling weight to Dr. Barnes' opinion.

(AR at 21 (citations omitted).)

It is not clear from the ALJ's opinion whether the discussion of the records from the Los Angeles Mission Community Clinic as a whole are directed at the specific findings of Dr. Barnes, or whether the ALJ's comments refer to the treatment notes by all of the medical providers at the clinic. Even assuming that the ALJ's comments were directed to Dr. Barnes' opinions, the ALJ still failed to provide specific and legitimate reasons for rejecting Dr. Barnes' findings.

The ALJ apparently rejected Dr. Barnes' opinions because Plaintiff was conservatively treated for low back pain and various mild ailments. (AR at 21.) However, it is not clear what additional treatment Plaintiff would have been provided at a free community clinic. Plaintiff was treated for his pain and prescribed pain medication. There is no indication that the clinic or Dr. Barnes were able to provide any additional services. Significantly, when Plaintiff was able to receive more extensive treatment through his employer's workman's compensation coverage, Plaintiff received considerable chiropractic treatment and received a recommendation from a neurosurgeon for "a full intensive medical treatment regimen, including therapy medications, exercises and perhaps epidural nerve block injections," with an additional recommendation for surgical treatment

in the event that Plaintiff's radiating leg pain continued. (AR at 170-276.)

The ALJ also seemed to reject Dr. Barnes' opinions because Plaintiff missed "several" appointments. (Id. at 21.) The record shows that Plaintiff missed his appointments at the clinic on April 20, 2006, and May 17, 2006. However, a progress note from April 19, 2006, shows that Plaintiff was seen at the clinic and treated for back pain. There is no indication on that note that Plaintiff was to return to the clinic the following day. It is further noted that Plaintiff appears to be a transient, as he has listed his address as the Los Angeles Union Rescue Mission on the majority of his filings to the Social Security Administration and this Court. (Id. at 52-54, 60, 101, 102, 125, 134, 156, 158.) It does not seem surprising that a transient individual would be periodically unable to attend a medical appointment and lack the ability to notify the medical provider or reschedule the appointment. Moreover, it is not apparent to the Court how Plaintiff's failure to appear at two appointments reflects on the veracity of Dr. Barnes' opinions. While Plaintiff's missed appointments might be relevant to a determination of Plaintiff's credibility, it does not seem to reflect on the doctor's capacity to express an opinion as to Plaintiff's impairments. Significantly, the ALJ did not rely on this factor in rejecting Plaintiff's subjective complaints of impairment.

The ALJ explicitly rejected Dr. Barnes' opinions because, in finding Plaintiff totally and permanently disabled, he "did not provide a more specific residual functional capacity assessment supported by objective findings and accompanied by a description of the type of treatment provided and the claimant's response to such treatment." (Id. at 21.) Although Dr. Barnes' letter expressing his opinion as to Plaintiff's disability status was rather conclusory, it is accompanied in the record by extensive treatment notes from Dr. Barnes. Moreover, the specific degree of impairment is an issue reserved to the Commissioner in making a determination of a claimant's Residual Functional

Capacity. See SSR 96-5p. Accordingly, any opinions of Dr. Barnes in this regard would have been ignored. Id.

Moreover, to the extent that Dr. Barnes' report was ambiguous or inadequate to allow for the proper evaluation of the evidence because it lacked findings as to the specific degree of impairment, the ALJ had a duty to further develop the record. See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where the claimant is represented by counsel); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen, 80 F.3d at 1288) (ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry").

The ALJ's failure to provide legally sufficient reasons for discounting Dr. Barnes' opinion regarding Plaintiff's condition warrants remand. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (in disregarding the findings of a treating physician, the ALJ must "provide detailed, reasoned and legitimate rationales" and must relate any "objective factors" he identifies to "the specific medical opinions and findings he rejects"); see, e.g., Nelson v. Barnhart, No. C 00-2986 MMC, 2003 WL 297738, at *4 (N.D. Cal. Feb. 4, 2003) ("Where an ALJ fails to 'give sufficiently specific reasons for rejecting the conclusion of [a physician],' it is proper to remand the matter for 'proper consideration of the physicians' evidence.'") (citation omitted). Accordingly, remand is required for the ALJ to set forth legally sufficient reasons for rejecting Dr. Barnes' opinion, if the ALJ again determines rejection is warranted.[2]

/ / /

---

[2] The Court expresses no view on the merits.

12

## 2. Chiropractor.

Plaintiff received significant chiropractic treatment from Farzad Tavebaty, D.C., following a workplace injury. (AR at 170-276.) However, the ALJ rejected the chiropractic evidence as follows:

> The claimant was treated by a chiropractor from January 2005 to June 2005 in connection with workers compensation litigation (p. 1). The diagnoses were lumbar strain/sprain rule out radiculopathy/myofascitis; thoracic sprain/strain; depression; insomnia; and cephalgia. The chiropractor felt that the claimant should avoid any prolonged sitting, standing and bending. According to 20 CFR 404.1513 and Social Security Ruling 06-03p, only an acceptable medical source can establish the existence of a medically determinable impairment, can give medical opinions, or can be considered a treating source. A chiropractor is specifically listed as not being an acceptable medical source. However, opinions from medical sources which are not acceptable medical sources can still be used to show the severity of an individual's impairment and how it affects his or her ability to function. Thus, such evidence must still be evaluated on the key issues of impairment severity and functional effects. The undersigned finds that several of the "diagnoses" made by the claimant's chiropractor (depression, insomnia, cephalgia) are outside of his area of expertise and would be more accurately described as symptoms rather than medical diagnoses. Moreover, the chiropractor's opinion that the claimant cannot perform any "prolonged" sitting, standing or bending is vague. Additionally, the chiropractor only treated the claimant for a relatively short period (barely six months). This evidence is therefore given no more than minimal weight.

(Id. at 21.)

Social Security Ruling 06-03p provides in part:

> [O]nly 'acceptable medical sources' can give us medical opinions . . . [and] only 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. . . . In addition to evidence from 'acceptable medical sources,' we may use evidence from 'other sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:
>
> • Medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists; . . . .
>
> Information from these 'other sources' cannot establish the existence of a medically determinable impairment.

SSR 06-03p. Because chiropractors are not "acceptable medical sources," their opinions are reviewed under the lay witness standard, rather than the physician's standard of review. However, lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Kus v. Astrue, 276 Fed. App'x 555, 556-57 (9th Cir. 2008) (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)).

The Court does not consider the persuasiveness of the ALJ's reasons for rejecting the chiropractor's opinions. Ultimately, the ALJ provided several reasons that were germane to the chiropractor's findings. Thus, the ALJ fulfilled

his duty to consider the evidence and provide sufficient reasons for giving the evidence minimal weight.

C. **Plaintiff's Ability to Perform Other Work Activity.**

Finally, Plaintiff appears to challenges the ALJ's conclusion that he retains the residual functional capacity ("RFC") to perform work that exists in significant numbers in the national economy. (Willis Decl. at 7-10.)

Based on the medical evidence and the weight assessed thereto in the opinions, the ALJ assessed Plaintiff's RFC as follows:

> The undersigned finds (giving the claimant's largely unsupported subjective complaints of pain and limitations the greatest benefit of the doubt) that the claimant is capable of performing medium exertional activity not involving any climbing or more than occasional balancing, stooping, kneeling, crouching or crawling.

(AR at 23 (citations omitted).)

In light of this RFC assessment, and with the support of testimony from a vocational expert, the ALJ concluded that Plaintiff could not perform his past relevant work as a stock clerk, but could perform other work as a laundry worker or dining room attendant. (Id. at 23-24.)

The ALJ assessed Plaintiff's RFC based on the medical evidence and Plaintiff's testimony, and the weight he assigned to each of those sources. Significantly, the Court has determined that this action must be remanded for the ALJ to reconsider the weight to be afforded Dr. Barnes' opinions and Plaintiff's subjective complaints of impairment. Accordingly, on remand, the ALJ is directed to reconsider Plaintiff's RFC in light of all the evidence of record and the appropriate weight afforded thereto.

/ / /

## V.

## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

Dated: April 27, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge